UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON MICHAEL SHERWOOD,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  1:16-CV-3203-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 13; 14). This Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

//

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158–59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the

ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

4    claimant suffers from "any impairment or combination of impairments which

5    significantly limits [his or her] physical or mental ability to do basic work activities,"

6    the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the

7    claimant's impairment does not satisfy this severity threshold, however, the

8    Commissioner must find that the claimant is not disabled.  *Id.*

9    At step three, the Commissioner compares the claimant's impairment to several

10   impairments recognized by the Commissioner to be so severe as to preclude a person

11   from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii);

12   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

15   If the severity of the claimant's impairment does meet or exceed the severity of

16   the enumerated impairments, the Commissioner must pause to assess the claimant's

17   "residual functional capacity."  Residual functional capacity ("RFC"), defined

18   generally as the claimant's ability to perform physical and mental work activities on a

19   sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1);

20   416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 CFR §§ 404.1560(c); 416.960(c)(2); *Bray*, 554

F.3d at 1222.

## ALJ FINDINGS

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on February 27, 2013. Tr. 20. Plaintiff's claims were denied initially and upon reconsideration. *Id.* Plaintiff requested a hearing before an ALJ which was held on March 11, 2015. Tr. 20; 39–77. At his hearing, Plaintiff amended the onset date of his disability to November 17, 2012; his date last insured is June 30, 2016. Tr. 20. The ALJ rendered a decision denying Plaintiff disability insurance and supplemental security income benefits on June 26, 2015. Tr. 20–30.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 17, 2012. Tr. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: "mental impairments variously described as affective disorder/bipolar disorder, anxiety disorder/post-traumatic stress disorder (PTSD), personality disorder, and substance addiction disorder; and joint dysfunction of the left wrist." *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional manipulative limitations, and with the mental capacity to perform simple work consistent with SVP 1 or 2 tasks and with additional social limitations. Tr. 25. This capacity prevented

Plaintiff from performing his past relevant work.  Tr. 29.  At step five, the ALJ

identified work Plaintiff can perform, such as a cleaner-housekeeping, mail clerk, and

assembler-production.  Tr. 30.  On that basis, the ALJ concluded that Plaintiff was

not disabled as defined in the Social Security Act.  *Id*.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his

supplemental security income under Title II and Title XVI of the Social Security Act.

Plaintiff raises three issues for the Court's review:

1. Whether the ALJ erred in finding Plaintiff not credible.

2. Whether the ALJ erred in weighing the medical and lay witness evidence.

3. Whether the ALJ erred at step two in assessing all of Plaintiff's severe and non-severe impairments.

ECF No. 13 at 5–6.  The Court evaluates each issue in turn.

## DISCUSSION

### A.   Adverse Credibility Finding

Plaintiff faults the ALJ for not crediting his testimony regarding his mental

health and physical impairments as disabling.  ECF No. 13 at 6–7.  Commissioner

contends that the ALJ provided clear and convincing reasons for rejecting Plaintiff's

testimony and subjective complaints.  ECF No. 14 at 3.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). In making an adverse credibility determination, the ALJ may consider,

*inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

Here, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. 26. The ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony of the limiting effects of his symptoms.

First, the ALJ determined that Plaintiff did not present evidence of a completely disabling mental impairment. Tr. 26. The ALJ cited that Plaintiff had his first reported episode of severe depression in 1991. Tr. 26; 376. In February 2013, Plaintiff reported "things are looking up" and felt better after being sober for 90 days. *Id.* In May 2013, Plaintiff was found to have anger that would cause moderate effects on his ability to work and depression that would have a mild effect on his ability to work. Tr. 26; 404. Yet, Plaintiff alleges that the ALJ "merely cherry-picked a tiny portion of Dr. Barnard's opinion." ECF No. 15 at 3. Dr. Barnard did find that Plaintiff's ability to perform a complete normal work day and work week without interruptions from psychologically based symptoms was severe and his ability to

maintain appropriate behavior in a work setting was also severe. Tr. 405. Yet, Dr. Barnard found other basic work activities that were merely mild or moderate, such as Plaintiff's ability to make simple work-related decisions, communicate and perform effectively in a work setting, and perform routine tasks without special supervision. *Id.* Overall, the ALJ completed a thorough review of the record, including the opinion of Dr. Barnard.

Additionally, the ALJ noted at the mental status examination in 2013 that Plaintiff had a stable mood on his current medications. Tr. 26; 424. Plaintiff contends that this citation does not constitute substantial evidence that his mental condition was stable on medication. ECF No. 15 at 3. Yet, the ALJ does not merely list this single citation as evidence of Plaintiff's mental state, but also found that Plaintiff did not require recent inpatient psychiatric hospitalization during the pertinent period nor emergent outpatient treatment. Tr. 26. The ALJ noted that Plaintiff appears to be able to function at a stable level. *Id.*

In considering the medical records and all other evidence, the ALJ found that while Plaintiff "exhibited some symptoms of medical conditions … it appears he was able to function at a stable level, which indicates that his allegedly disabling mental symptoms are not as severe as alleged." Tr. 26. The ALJ noted that Plaintiff was independent in self-care and activities of daily living. Tr. 26; 288–89. Plaintiff also did not show significant signs of tangential/circumstantial thought, loose associations,

homicidal ideation, excessive paranoia, or excessive hallucinations. Tr. 27. The ALJ determined that the medical record does not support the alleged symptoms of difficulty sleeping on a consistent basis, frequent manic episodes, significant memory loss, disorientation, significant oddities of thought, frequent illogical thinking, pervasive loss of interest in things, or violent levels of constant hostility. *Id.*

The ALJ noted that the file also does not show consistently low GAF scores. Tr. 27. The ALJ later gave the GAF scores little weight as they can often vary due to different clinicians and subjective factors, such as unemployment, household issues, or legal problems. Tr. 28. Plaintiff argues that the ALJ took a prejudicial approach to analyzing this evidence because the ALJ allegedly rejected his testimony due to these GAF scores but then determined that the GAF scores do not carry significant weight. ECF No. 15 at 5. Yet, Plaintiff is incorrect that the ALJ found his testimony not credible due to the GAF scores. This one sentence regarding the GAF scores was encompassed by pages of medical citations and reasoning. The ALJ merely noted that the GAF scores were of relevance and later gave them little weight, which does not constitute prejudice. *Id.*

These numerous citations to the record regarding Plaintiff's mental health illustrates that the ALJ did provide specific, clear, and convincing reasons for finding that Plaintiff's testimony regarding the severity of his mental health is not entirely credible. Tr. 26.

Second, as to Plaintiff's joint dysfunction of the left wrist, the ALJ found that the objective medical record does not indicate that the Plaintiff had significant functional limitations.  Tr. 27.  On May 2013, Plaintiff reported that he had pain in his left wrist for seven years.  Tr. 27; 421.  On June 2013, a review of his original MRI in 2007 showed a cyst and possible tear of the joint.  Yet, the Plaintiff "continued to work in construction for the next 5 years."  Tr. 27; 472.  At this office visit in June 2013, Plaintiff was found to have the same range of motion in his left and right wrists and an x-ray revealed "[n]ormal left wrist x-rays."  Tr. 27; 475.  In July 2013, Plaintiff was found to have normal range of motion.  Tr. 27; 847.  In January 2015, the Plaintiff stated that after his left wrist surgery, he still had pain where severity was level 1 out of 6.  Tr. 27; 958.

Plaintiff again contends that the ALJ conducted a "cherry-picked review of the record."  ECF No. 15 at 6.  Yet, the ALJ reviewed the objective medical evidence and provided specific, clear, and convincing reasons for the finding that Plaintiff's physical impairment is not as severe as alleged.  Tr. 27.  This Court finds that the ALJ did not err in determining that Plaintiff's testimony was not credible due to the record and objective medical evidence.

Overall, the ALJ's decision provided specific, clear, and convincing reasons supported by substantial evidence sufficient for this Court to conclude that the adverse credibility determination was not arbitrary.

## B.    Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the medical opinions of Dr. Barnard, Dr. Carstens, and Dr. Lu; and the lay witness testimony of Ms. Studer.  ECF No. 13 at 12–18.  The Commissioner contends that the ALJ properly considered and addressed the medical evidence of the record.  ECF No. 14 at 12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* at 1202.  In addition, the Commissioner's regulations give more weight to opinions supported by reasoned explanations than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830–31).  "If a treating or examining doctor's opinion is

contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830–31). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

//

//

**1. Dr. Barnard, examining psychologist, and Dr. Carstens, reviewing**

Plaintiff contends that the ALJ erred in rejecting the psychological opinion of Dr. Barnard. ECF No. 13 at 12. The ALJ gave little weight to the opinion of Dr. Barnard, as "the objective medical evidence does not support finding the severity of conditions opined by Dr. Barnard." Tr. 28. Plaintiff contends that the ALJ did not offer a further explanation, citation to the record, or discussion of Dr. Barnard's findings. ECF No. 13 at 12–13. Yet, the ALJ thoroughly analyzed Dr. Barnard's findings as outlined above. The ALJ cited Dr. Barnard's findings that Plaintiff's mental health symptoms would only mildly or moderately impede a daily work life. Tr. 26; 404. In looking at the medical evidence, including Dr. Barnard's findings, the ALJ determined that Plaintiff's medical impairments were not severe. Tr. 27. Therefore, the ALJ does discuss and consider Dr. Barnard's findings before determining that his opinion deserves little weight. This Court finds that the ALJ properly considered the opinion of Dr. Barnard and did not err in giving it little weight, as it was not supported by objective medical evidence.

Plaintiff also argues that the ALJ ignored Dr. Carstens' review and agreement with Dr. Barnard's evaluation. ECF No. 13 at 13; Tr. 436; 446. While Plaintiff is correct that the ALJ did not address Dr. Carstens' opinion, it was merely a review of Dr. Barnard's findings, which the ALJ did address. Dr. Carstens also reviewed the Yakima Neighborhood Health assessment, but concluded the same findings as Dr.

Barnard. Tr. 446. Therefore, even though the ALJ did not review the findings of Dr. Carstens, this Court determines that any failure to address the opinion of Dr. Carstens is harmless error as it is inconsequential to the ALJ's ultimate findings and is repetitive of Dr. Barnard's opinion. *See Molina*, 674 F.3d at 1115.

### 2. Dr. Lu, treating physician

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Lu. ECF No. 13 at 16. The ALJ gave little weight to the opinion of Dr. Lu because the objective medical evidence as a whole did not support finding the type of disabling impairments opined by Dr. Lu. Tr. 28. While Dr. Lu is a treating physician and so more weight should be given to his opinion, the ALJ's failure to address this medical opinion is still harmless error. Dr. Lu found on various examinations that Plaintiff sometimes reported depression and anxiety, but no stress, loss of interest, weight change or fatigue. Tr. 907; 911. He reported insomnia on one occasion. Tr. 903. He also reported no depression nor loss of interest, but anxiety, insomnia, and stress on one occasion. Tr. 916. He reported only anxiety on another occasion. Tr. 920. On one occasion he reported having no mental impairments. Tr. 924. These varying findings are inconsequential to the overall medical record, as Plaintiff's self-reporting on his mental impairments carries less weight when the ALJ already determined that Plaintiff's claims of the severity of his impairments were not credible. Therefore, the Court finds that the ALJ's failure to address the findings of Dr. Lu is harmless error as

the self-reporting found within the medical opinions of Dr. Lu is inconsequential in regards to the entire objective medical evidence.

### 3. Ms. Studer, lay witness testimony

Plaintiff contends that the ALJ improperly discounted the testimony of Ms. Studer, Plaintiff's mother. ECF No. 13 at 18. The ALJ stated that Ms. Studer's report must be considered under Social Security Ruling 06-03p to show the severity of Plaintiff's impairments and how they affect his ability to function. Tr. 28. Upon fully considering Ms. Studer's statement and the severity of the impairments, the ALJ gave partial weight inasmuch as it was supported by the overall evidence. *Id.*

Competent lay witness testimony "*cannot* be disregarded without comment." *Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must give reasons that are germane to each witness. *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In *Molina*, the ALJ referenced the third party statements, but did not provide a reason for discounting the testimony. *Id.* at 1114–15. The court still determined that the failure to disregard without a comment was harmless error. *Id.* Here, the ALJ did provide a germane reason to give partial weight to Ms. Studer's report. The ALJ stated, "The undersigned has fully considered the statement by the claimant's mother … in assessing the severity of the claimant's impairments and determining his residual functional capacity herein, and gives it partial weight inasmuch as it is supported by the overall evidence." Tr. 28.

Therefore, the ALJ did not find that Ms. Studer's testimony was not credible, unlike *Molina*, but that her testimony should be considered alongside that of the overall evidence. *Molina*, 674 F.3d at 1115.

Even if the ALJ did err in not providing a fuller explanation for the partial weight, it would be harmless error. According to the Ninth Circuit, "[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Here, the ALJ discredited Plaintiff's testimony, which is the same evidence offered by Ms. Studer. Ms. Studer noted that Plaintiff is limited in his work due to his wrist and mental issues. Tr. 269. She stated that he complains that he has difficulty sleeping. Tr. 270. Yet, he is able to go out daily, cook for himself, and ride his bike. Tr. 271–73. The ALJ noted Plaintiff's daily living activities in the findings. Tr. 26. Ms. Studer also stated that Plaintiff is difficult to get along with if he is not medicated. Tr. 274. This report is consistent with Plaintiff's testimony regarding his mental and physical impairments, which the ALJ found not credible. The same objective medical evidence the ALJ referred to in discrediting Plaintiff would also discredit Ms. Studer, and this Court finds that the alleged err is harmless.

//

//

### C. Step Two Analysis

Plaintiff next argues that the ALJ erred by only finding that Plaintiff had severe mental impairments and joint dysfunction of the left wrist, but not severe respiratory and pain disorders. ECF No. 13 at 18–19.

The step two inquiry is merely a *de minimis* screening device intended to dispose of groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quotation and citation omitted). It does not result in a finding of disability if a particular impairment is found to be "severe" within the meaning of the Commissioner's regulations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment). A plaintiff bears the burden of proving that his or her medically determinable impairment or its symptoms affect his or her ability to perform basic work activities. *Edlund*, 253 F.3d at 1159–60.

1    Here, the ALJ found that Plaintiff had the severe impairments of affective

2    disorder/bipolar disorder, anxiety disorder/post-traumatic stress disorder, personality

3    disorder, and substance disorder.  Tr. 22.  The ALJ also found that Plaintiff had the

4    severe impairment of joint dysfunction of the left wrist.  *Id.*  The ALJ determined that

5    these impairments were severe because "they more than minimally limit the

6    claimant's ability to perform basic work related activity."  *Id.*

7    Plaintiff contends that the ALJ should have found Dr. Lu's diagnosis of COPD

8    and asthma[1] severe.  ECF No. 13 at 19.  Dr. Lu merely noted in the history of the

9    present illness (HPI) that Plaintiff had asthma and COPD.  Plaintiff's chief complaint

10   was hand joint pain.  Tr. 875.  In a medical report, Dr. Lu wrote COPD under

11   diagnoses.  Tr. 898.  Additionally, Plaintiff argues the ALJ failed to accept or reject

12   the diagnosis of a pain disorder with psychological factors and a general medical

13   condition given by Dr. Barnard.  Tr. 404.  Under a list of diagnoses, Dr. Barnard noted

14   a pain disorder, but did not further address it in his medical opinion.  Rather, Dr.

15   Barnard focused on Plaintiff's ability to work and the severity of his anger and

16   depression, which was addressed by the ALJ.  Tr. 405.

17   The ALJ's failure to address the respiratory and general pain disorder constitute

18   harmless err, as there is no evidence in the opinions of Dr. Lu or Dr. Barnard that such

19

20   _____

[1]     Dr. Lu noted that "patient is actively smoking."  Tr. 878.

diagnoses limited Plaintiff's ability to perform basic work functions. *See* 20 C.F.R. § 416.920(c). Plaintiff misconstrues the purpose of step two and, having passed through the step two window, Plaintiff cannot show he was harmed by the ALJ's step two findings. The ALJ reviewed all medical evidence and the record throughout the opinion and found most of Plaintiff's impairments severe. Tr. 22. This Court finds that even if the ALJ erred in not addressing these two diagnoses, this error was harmless.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

The District Court Executive is directed to enter this Order and judgment for the Defendant, furnish copies to counsel, and **CLOSE** the file.

**DATED** September 28, 2017.



THOMAS O. RICE
Chief United States District Judge